IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| STATE OF ALABAMA, | * | |
| ex rel Ashley M. Rich, | * | |
| District Attorney for the | * | |
| 13th Judicial District of | * | |
| Alabama, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CIVIL ACTION NO.14-00066-CG-B |
| | * | |
| 50 SERIALIZED JLM GAMES, INC. | * | |
| GAMBLING DEVICES, *et al.*, | * | |
| | * | |
| Defendants. | * | |

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff the State of Alabama's ("the State") Motion to Remand (Doc. 8) and the MOWA Band of Choctaw Indians, Jimmy L. Martin, Chief Framon Weaver, and JLM Games, Inc.'s Motion to Dismiss (collectively referenced as "the MOWA Defendants") (Docs. 5, 10). The motions, which have been fully briefed and are ripe for resolution, have been referred to the undersigned Magistrate Judge for entry of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the undersigned RECOMMENDS that Plaintiff's Motion to Remand be **GRANTED** and that this case be remanded to the Circuit Court of Mobile County, Alabama.

## I.  Background

This lawsuit involves *in rem* forfeiture proceedings initiated by the State of Alabama in the Circuit Court of Mobile County, Alabama, on December 6, 2013, against 50 serialized JLM Games, Inc. gambling devices, $10,090.47 in U.S. Currency, 3 computers, Miscellaneous Gambling Documents, and Paraphernalia. (Doc. 1-1 at 2).  According to the State, these items were seized during the execution of a search warrant at the MOWA/Choctaw Entertainment Center in Mount Vernon, Alabama as a part of a criminal investigation into gambling offenses under Alabama Code 13A-12-20. (Id., at 3).  The State alleges that the seized items are illegal gambling devices that were used and are intended to be used for the purpose of unlawful gambling activity, in violation of Alabama law. (Id.).

According to the State, notice of the *in rem* forfeiture proceeding was served upon the MOWA/Choctaw Entertainment Center [hereinafter MOWA Choctaw Center], where the alleged illegal gambling activity was taking place, Framon Weaver, who is identified as a person who was allegedly promoting the illegal gambling activity at the MOWA Choctaw Center, and JLM Games, Inc., the entity that allegedly supplied the gaming devices to the MOWA/Choctaw Center and that retains an interest in the devices that the State seeks to have forfeited. (Id., at 5; Doc. 8 at 2).  On February 7, 2014, the MOWA Choctaw Center and

Framon Weaver filed a motion in state court seeking to dismiss the forfeiture action on the basis of sovereign immunity of the MOWA Tribe. (Doc. 1-1 at 69).

Subsequent thereto, JLM Games, Inc., Jimmy L. Martin, the MOWA Bank of Choctaw Indians and Framon Weaver (Collectively referenced as the "MOWA" defendants) removed this action to this Court on February 18, 2014. (Doc. 1). In their original notice, Defendants cited 28 U.S.C. §§ 1331, 1441, and 1446 as the grounds for removal[1]. (Id.). After being granted leave to file an amended notice of removal, the MOWA Defendants asserted that federal jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, 1441, 1443, and 1446. (Docs. 17, 31). According to the MOWA Defendants, removal is proper pursuant to § 1331, federal question jurisdiction, because the "central issue...is whether the MOWA Tribe is entitled to assert a defense of sovereign immunity", and this determination "relies heavily on the interpretation of the 1830 Treaty of Dancing Rabbit Creek, a federal treaty entered into between the Choctaws and Congress." (Doc. 31 at 4-5). Additionally, the MOWA Defendants contend that federal question jurisdiction exists pursuant to the Indian

---

[1] Defendants also sought permission to file a consolidated brief in support of their removal notice and a motion to dismiss in excess of the Court's page limitation. The motion was denied and Defendants were directed to file separate documents as the brief in support of removal and the motion to dismiss involved distinct issues. (Docs. 2, 4).

Gaming Regulation Act ("IGRA"), the All Writs Act, and the Anti-Injunction Act. (Doc. 17 at 11-14; Doc. 31. at 6, 6-9). The MOWA Defendants further contend that this action is removable pursuant to § 1443 because the State's seizing of their gambling equipment constitutes a violation of their civil rights and a violation of their right to due process because the State has not seized the gambling equipment of other native tribes. (Id., at 9-10).

Additionally, on February 20, 2014, the MOWA Defendants filed a Motion to Dismiss on the basis of sovereign immunity. (Doc. 5). In support thereof, the MOWA Defendants contend that the MOWA Tribe has enjoyed federal and state recognition as an Indian tribe and is not a political subdivision of the State; thus, the State of Alabama has no authority to regulate gaming in "Indian Country." (Doc. 10 at 7). The MOWA Defendants further contend that the Tribe enacted an amended Tribal Gaming Ordinance that defines Class II gaming based on federal laws set forth in the Indian Gaming Regulatory Act ("IGRA") and it is the IGRA's definition of gambling rules, rather than the State's regulations, that controls the propriety of the MOWA Tribe's gaming activities. (Id., at 8). Additionally, the MOWA Defendants contend that the Supremacy Clause, the Indian Commerce Clause and the IGRA preempt the State's claims because Congress, unless it delegates otherwise, has plenary power to

regulated Indian Tribes. (Id., at 27).

On February 20, 2014, the State filed a motion seeking remand of this case to the Circuit Court of Mobile County, Alabama. (Doc. 8). In its motion, reply, and supplement the State argues that this Court lacks subject matter jurisdiction. (Docs. 8, 26, 32). Specifically, the State contends that federal jurisdiction is improper as the MOWA Defendants' reliance on the IGRA is misplaced because the IGRA protections only extend to federally recognized Indian tribes and the MOWA Defendants were unsuccessful at gaining federal recognition by the Department of Interior's Office of Federal Acknowledgement. (Doc. 8 at 3). Additionally, the State contends that the fact that the MOWA Tribe has been recognized by the State of Alabama is of no consequence because such recognition confers only potential state law rights upon the MOWA Tribe – the interpretation of which remains a question of state law. (Id., at 4). Further, the State argues that because the MOWA Tribe cannot claim sovereign immunity arising out of any federally conferred rights then there is no federal question involved in these proceedings.

Additionally, the State contends that jurisdiction is improper because the State has not consented to this Court's jurisdiction on this matter and permitting such suit is a violation of the State's Eleventh Amendment sovereign immunity.

(Doc. 26). The State further contends removal is improper because the MOWA Defendants' reliance on their potential immunity defense in support of removal fails to satisfy the well-pleaded complaint rule as it fails to "allege a claim that *arises* under the constitution"' instead, the MOWA Defendants cite merely a defense to the State's claim. (Doc. 32 at 2) (emphasis added). Thus, the face of the complaint does not establish federal jurisdiction. Finally, the State argues that the MOWA Defendants' civil rights discrimination claim pursuant to § 1443 is baseless because there is only one other Indian tribe in this jurisdiction and unlike the MOWA Tribe, the other Indian tribe is federally recognized and is therefore protected by the IGRA. Thus, the State contends that this Court lacks federal jurisdiction as there is no federal question on the face of the complaint and the MOWA Defendants have failed to prove that jurisdiction is proper in this Court.

In response, the MOWA Defendants' assert that this case is an exception to the well-pleaded complaint rule based on artful pleading. (Doc. 33). Specifically, the MOWA Defendants contend that a federal question exists because the Court must interpret the Treaty of Dancing Rabbit Creek in order to determine whether the MOWA Tribe can invoke sovereign immunity. (Id., at 3). Further, the MOWA Defendants argue that the IGRA completely preempts the State's claim. (Id., at 5).

As a preliminary matter, the undersigned notes that while the MOWA Defendants' motion to dismiss was filed first, the motion to remand raises the threshold issue of subject-matter jurisdiction. Accordingly, it will be addressed first because "[a]bsent federal jurisdiction, this Court lacks the power to decide the pending motion to dismiss, and must immediately remand this action to state court without reaching the question of whether the State has stated cognizable claims against the Defendants." Cooper v. Int'l Paper Co., 912 F. Supp. 2d 1307, 1308 (S.D. Ala. 2012).

## II. Analysis

### A. Standard of Review

Federal district courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The determination of whether an action "arises under" the laws of the United States is made pursuant to the "well-pleaded complaint rule." Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 152, 29 S. Ct. 42, 53 L. Ed. 126 (1908). "Federal courts have jurisdiction to hear, originally or by removal, only those cases in which the well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of

a substantial question of federal law." <u>Wuerl v. International Life Science Church</u>, 758 F. Supp. 1084, 1086 (W.D. Pa. 1991) (citations omitted).

"As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." <u>Beneficial Nat'l Bank v. Anderson</u>, 539 U.S. 1, 6, 123 S. Ct. 2058, 156 L. Ed. 2d 1 (2003). When only state-law claims are asserted in a complaint, a claim "aris[es] under" federal law if it "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." <u>Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.</u>, 545 U.S. 308, 314, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005). That is, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in the federal court without disrupting the federal-state balance approved by Congress." <u>Gunn v. Minton</u>, 133 S. Ct. 1059, 1065, 185 L. Ed. 2d 72 (2013).

"Because a federal question must appear on the face of the plaintiff's complaint to satisfy the well-pleaded complaint rule, a defense which presents a federal question can not create removal jurisdiction. Thus, a case may not be removed to

federal court on the ground of a federal question defense alone, even if that defense is valid." Kemp v. IBM, 109 F.3d 708, 712 (11th Cir. 1997) (citation omitted). See Nicodemus v. Union Pac. Corp., 440 F.3d 1227, 1232 (10th Cir. 2006) (explaining that "federal-question jurisdiction may not be predicated on a defense that raises federal issues" and that a federal defense is "not enough" to make a case arise under federal law); see also Aetna Health Inc. v. Davila, 542 U.S. 200, 207, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004) (explaining that whether case arises under federal law "must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose") (internal quotations omitted); Franchise Tax Bd. of California v. Constr. Laborers Vacation Trust of California, 463 U.S. 1, 13-14, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983) (explaining that, if "federal law becomes relevant only by way of a defense to an obligation created entirely by state law" the well-pleaded complaint rule prevents the exercise of federal question jurisdiction and that this is true "even if the defense is anticipated" in the plaintiff's complaint); Pinney v. Nokia, Inc., 402 F.3d 430, 446 (4th Cir. 2005) (reversing district court's finding of federal-question jurisdiction where federal regulation became relevant only in

relation to a federal preemption defense).

That said, there is a qualification to the well-pleaded complaint rule known as "complete preemption" or "super preemption." Under the "complete preemption" doctrine, Congress may preempt an area of law so completely that any complaint raising claims in that area is necessarily federal in character and therefore necessarily presents a basis for federal court jurisdiction. <u>Metropolitan Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 63-64, 107 S. Ct. 1542, 95 L. Ed. 2d 55 (1987). In such a situation, the statute's "extraordinary pre-emptive power" not only provides a federal defense to the state common law complaint but "converts...[it] into one stating a federal claim for purposes of the well-pleaded complaint rule." <u>Id.</u>, 481 U.S. at 65.

A removing defendant must establish the propriety of removal under 28 U.S.C. § 1441 and, therefore, must establish the existence of federal jurisdiction. <u>See</u> <u>Friedman v. New York Life Ins. Co.</u>, 410 F.3d 1350, 1353 (11th Cir. 2005) ("In removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists.")(citation omitted). Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand. <u>See</u> <u>Univ. of S. Ala. v. Am. Tobacco Co.</u>, 168 F.3d 405,

411 (11th Cir. 1999).


## B. Discussion

### (i) Tribal Immunity Doctrine

As noted *supra*, the MOWA Defendants contend that federal question jurisdiction is proper pursuant to § 1331 and § 1443. According to Defendants, although the MOWA Tribe was unsuccessful at gaining federal recognition by the Department of Interior's Office of Federal Acknowledgement ("OFA"), the MOWA Tribe meets that qualifications for federal recognition under Montoya v. U.S., 180 U.S. 261, 266, 215 S. Ct. 358, 59, 45 L. Ed. 2d 521 (1901); thus, they are entitled to tribal sovereign immunity, and the State's forfeiture claim is completely preempted by the IGRA.

Although the Supreme Court has expressed some doubt about the continued wisdom of the tribal immunity doctrine, it is nonetheless clear that "[a]s a matter of law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." Kiowa Tribe v. Mfg. Techs, 523 U.S. 751, 754, 118 S. Ct. 1700, 140 L. Ed. 2d 981 (1998); accord Okla. Tax Comm'n v. Citizen Bank Potawatomi Indian Tribe of Okla., 498 U.S. 505, 509, 111 S. Ct. 905, 112 L. Ed. 2d 1112 (1991) ("Indian tribes are domestic dependent nations that exercise inherent sovereign authority over their members and

territories. Suits against Indian tribes are thus barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation." (internal quotation marks and citation omitted))); Furry v. Miccosukee Tribe of Indians of Fla., 685 F.3d 1224 (11th Cir. 2012).

However, it is well settled that assertion of tribal sovereign immunity, as a defense to a state-law claim, does not create federal-question jurisdiction. Okla. Tax Comm'n v. Graham, 489 U.S. 838, 841, 109 S. Ct. 1519, 103 L. Ed. 2d 924 (1989) (citing Gully v. First National Bank, 299 U.S. 109, 57 S. Ct. 96, 81 L. Ed. 70 (1936) ("But it has long been settled that the existence of a federal immunity to the claims asserted does not convert a suit otherwise arising under state law into one which, in the statutory sense, arises under federal law."); see also Oklahoma ex rel. Edmondson v. Larkin, 2010 U.S. Dist. LEXIS 36720, at *30-31, 2010 WL 1542573 (N.D. Okla. Apr. 14, 2010) (rejecting tribe's argument that all taxation of Indians is "completely preempted" by federal law and concluding that sovereign immunity defense did not create a substantial federal question).

In Okla. Tax Comm'n, the Supreme Court reversed the circuit court's dismissal of the plaintiff's motion to remand, and explained that:

The jurisdictional question in this case is not

affected by the fact that tribal immunity is governed by federal law...Congress has expressly provided by statute for removal when it desired federal courts to adjudicate defenses based on federal immunities. See Willingham v. Morgan, 395 U.S. 402, 406-407 (1969) (removal provision of 28 U. S. C. § 1442(a)(1) for federal officers acting "under color" of federal office sufficient to allow removal of actions in which official immunity could be asserted); Verlinden B. V. v. Central Bank of Nigeria, 461 U.S. 480, 493, n. 20 (1983) (original federal jurisdiction under 28 U. S. C. § 1330(a) over claims against a foreign sovereign which allege an exception to immunity). Neither the parties nor the courts below have suggested that Congress has statutorily provided for federal-court adjudication of tribal immunity notwithstanding the well-pleaded complaint rule.

489 U.S. at 841-842. The Supreme Court made it clear that absent Congressional legislation, tribal immunity does not circumvent the requirements of the well-pleaded complaint rule. Id.; County of Madera v. Picayune Rancheria of the Chukchansi Indians, 467 F. Supp. 2d 993, 1001 (E.D. Cal. 2006) (the defense of tribal sovereign immunity is an insufficient basis for federal question jurisdiction)

While the MOWA Defendants cite Contour Spa at the Hard Rock, Inc. v. Seminole Tribe of Fla., 692 F.3d 1200 (11th Cir. 2012) to support their contention that the Eleventh Circuit permits removal based on tribal immunity, their reliance is misplaced. Contour Spa involved a contract dispute between the owners of a spa leased (at the Hard Rock Casino) on land owned by the Seminole Indian Tribe, a federally recognized Indian tribe. Id. As a federally recognized tribe, the parties' lease

was explicitly conditioned upon approval by the Secretary of the Interior and subject to federal regulations pursuant to 25 C.F.R. Part 163 and 25 U.S.C. § 81. The required approval was never obtained, and after six years, the Seminole tribe evicted the spa owners although four years remained on the parties' lease agreement. Id., 692 F.3d at 1202-3. The Contour Spa owners filed a lawsuit in state court against the Seminole tribe and asserted federal claims under The Indians Civil Rights Act, 25 U.S.C. §§ 1301-02, and The Indian Long-Term Leasing Act and its accompanying regulations, 25 U.S.C. § 415 and 25 C.F.R. pt. 2, 162, as well as state law claims such as wrongful eviction and fraud. Contour Spa, 692 F.3d at 1203. The Seminole Tribe removed the action to federal court and filed a motion to dismiss based upon sovereign immunity. The district court dismissed the federal claims for lack of jurisdiction based on tribal immunity and remanded the state law claims back to state court. Id., 692 F.3d at 1211. On appeal, the plaintiffs argued that the Seminole Tribe had waived its immunity by removing the action to federal court. In affirming the trial court, the Eleventh Circuit held that a waiver of tribal sovereign immunity cannot be implied on the basis of a tribe's actions, but must be unequivocally expressed, and that any congressional abrogation must be unequivocally expressed. See Sanderlin v. Seminole Tribe, 243 F.3d 1282, 1286 (11th Cir. 2001); Florida v. Seminole

<u>Tribe</u>, 181 F.3d 1237, 1243-1244 (11th Cir. 1999).

Unlike the instant case, the plaintiffs in <u>Contour Spa</u> asserted both federal and state claims in their complaint; thus, the well-pleaded complaint rule was satisfied and the complaint was properly removed from state court as federal claims were present on the face of the complaint. Furthermore, <u>Contour Spa</u> was before the Eleventh Circuit on review of a motion to dismiss, not a motion to remand for lack of federal jurisdiction. Thus, the Eleventh Circuit did not address the issue before this court, namely whether the defense of tribal sovereign immunity provides a basis for federal question jurisdiction. Additionally, it is noteworthy that in <u>Contour Spa</u>, even after finding that the Seminole tribe, as a federally recognized Indian Tribe by the OFA, was entitled to sovereign immunity on the federal claims, the remaining state law claims were remanded to state court because there was no basis for supplemental jurisdiction. <u>Id.</u> Thus, the MOWA Defendants' assertion that the Eleventh Circuit, in <u>Contour Spa</u>, permits a defense of tribal sovereign immunity to serve as the basis for federal question jurisdiction is incorrect, and as such assertion directly contradicts the Supreme Court's decision in <u>Okla. Tax Comm'n</u> it is plainly erroneous. Accordingly, the MOWA Defendants' tribal immunity defense cannot serve as the basis

for federal question removal[2].

### (ii) Indian Gaming Regulation Act ("IGRA")

The MOWA Defendants also argue that the State's forfeiture action is completely preempted by the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701, *et seq*. The State contends that the IGRA is not applicable to this action because the MOWA Band has not been federally recognized. The IGRA "provide[s] a statutory basis for the operation and regulation of gaming by

---

[2] The MOWA Defendants also contend that the MOWA Band was recognized as an Indian tribe in the Treaty of Dancing Rabbit Creek, that the MOWA Band meets the criteria for common law recognition of a tribe established by the Supreme Court in Montoya v. United States, 180 U.S. 261, 266, 21 S. Ct. 358, 45 L. Ed. 2d 521 (1901), and that as a result, they are entitled to tribal sovereign immunity. The MOWA Defendants further contend that this Court can rely on the All Writs Act and the Anti-Injunction Act to exercise jurisdiction and issue injunctions because the MOWA Band is protected by tribal sovereign immunity. The Court recognizes that in order to determine whether sovereign immunity applies, a tribe must be a tribe recognized by Congress or the Bureau of Indian Affairs (BIA), see United States v. Sandoval, 231 U.S. 28, 46-47, 34 S. Ct. 1, 58 L. Ed. 107 (1913), or meet the federal common law definition. See Montoya v. United States, 180 U.S. 261, 266, 21 S. Ct. 358, 45 L. Ed. 521, 36 Ct. Cl. 577 (1901). However, this Court need not reach that issue because assuming *arguendo* that the MOWA Band is entitled to tribal sovereign immunity, as noted *supra*, the Supreme Court has made it clear that absent Congressional legislation, tribal immunity does not circumvent the requirements of the well-pleaded complaint rule. Okla. Tax Comm'n, 489 U.S. at 841. Thus, the defense of tribal sovereign immunity does not confer federal question jurisdiction over this action.

Indian tribes." Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 48, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996). Under the statute, "Indian tribes have the exclusive right to regulate gaming activity on Indian lands if the gaming activity is not specifically prohibited by Federal law and is conducted within a State which does not, as a matter of criminal law and public policy, prohibit such gaming activity."[3] 25 U.S.C. § 2701(5).

While the Eleventh Circuit has not directly addressed the issue of whether IGRA is a complete-preemption statute, in Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Florida ("Tamiami I"), the Eleventh Circuit observed that:

> The Senate report unequivocally states, however, that IGRA "is intended to expressly preempt the field in the governance of gaming activities on Indian lands." Id.[,] at 6, 1988 U.S.C.C.A.N. at 3076. The occupation of this field by federal law is evidenced by the broad reach of the statute's regulatory and enforcement provisions and is underscored by the comprehensive regulations promulgated under the

---

[3] The IGRA divides gaming into three classes. Class I gaming, which includes social games solely for prizes of minimal value or traditional forms of Indian gaming in connection with tribal ceremonies or celebration, is beyond the reach of both federal and state regulation. 25 U.S.C. §§ 2703(6), 2710(a)(1). States may influence Class II gaming, which includes "the game of chance commonly known as bingo" only if they prohibit those games for everyone under all circumstances. 25 U.S.C. §§ 2703(7)(A)(i); 2710(b)(1)(A). Class III gaming, which includes slot machines and casino games, may be conducted on Indian games if (1) authorized by the tribe seeking to conduct the gaming; (2) located in a state which does not bar such gaming; and (3) conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State. . ." 25 U.S.C. §§ 2703(8); 2710(d).

statute.

63 F.3d 1030, 1033 (llth Cir. 1995)

Following Tamiami I, courts directly addressing the issue have concluded that where the IGRA is applicable, it completely preempts actions that would interfere with the tribal governance of gaming on Indian lands. See Gaming Corp. of Am. v. Dorsey & Whitney, 88 F. 3d 536, 547 (8th Cir. 1996) (the IGRA "has the requisite extraordinary preemptive force necessary to satisfy the complete preemption exception to the well-pleaded complaint rule."); State of Alabama v. PCI Gaming Authority, 2014 U.S. Dist. LEXIS 49606 (M.D. Ala. April 10, 2014) (state law nuisance claim that seeks to enjoin alleged illegal gaming occurring on Indian lands is completely preempted.). "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." Behlen v. Merrill Lynch, 311 F.3d 1087, 1090 (llth Cir. 2002).

As noted, the State contends that the Court need not reach the issue of the preemptive effect of the IGRA because it does not apply to this case since the MOWA band is not a federally recognized tribe. Indeed, a review of the IGRA reveals that it does not apply to tribes that have not obtained formal federal recognition. The IGRA expressly provides in pertinent part:

(5) The term "Indian tribe" means any Indian tribe, band, nation, or other organized group or community of Indians which--

(A) is recognized as eligible by the **Secretary** for the special programs and services provided by the United States to Indians because of their status as Indians, and

(B) is recognized as possessing powers of self-government.

...

(10) The term "Secretary" means the Secretary of the Interior.

25 U.S.C. § 2703(5), (10) (emphasis added). Because IGRA's text unambiguously limits its scope to gaming by tribes that have obtained federal recognition, the statute does not apply to tribal groups such as the MOWA Tribe who have not obtained such recognition from the Secretary of Interior. See Passamaquoddy Tribe v. Maine, 75 F.3d 784, 792, n.4 (1st Cir. 1996) ("[IGRA] has no application to tribes that do not seek and attain federal recognition."); First Am. Casino Corp. v. Eastern Pequot Nation, 175 F. Supp. 2d 205, 209-10 (D. Conn. 2000) (Because "IGRA's text unambiguously limits its scope to gaming by tribes that have attained federal recognition, the statute does not apply to defendant's gaming-related activities [where the Indian tribe had not yet attained formal federal recognition]."); see also Picayune Rancheria of the Chukchansi Indians v. Tan, 2014 U.S. Dist. LEXIS 29973, at *9 (E.D. Cal. Mar. 7, 2014) ("Plaintiffs

are not an "Indian tribe" for purposes of IGRA because they do not fall within such definition under Section 2703, Subsection 5 of Title 25 of the United States Code." (quotation marks in original)); Carruthers v. Flaum, 365 F. Supp. 2d 448, 466 (S.D.N.Y 2005) ("IGRA applies only to the activities of federally recognized tribes.")

It is undisputed by the parties that the MOWA Tribe was unsuccessful at gaining federal recognition by the OFA.[4] (Docs. 8 at 3; Doc. 17 at 11-14). Additionally, a review of the Department of Indian Affairs Federal Register confirms that the MOWA Defendants do not enjoy federal recognition by the OFA. See Indian Entities Recognized and Eligible to Receive Services from the Bureau of Indian Affairs, 77 Fed. Reg. 47868-47873 (August 10, 2012) (Notice)[5]. Accordingly, the IGRA does not completely preempt the State's forfeiture action, and as a result, the MOWA Defendants have failed to establish federal question jurisdiction under the IGRA.

---

[4] Federal recognition is a legal status afforded to "American Indian groups indigenous to the continental United States . . . that can establish a substantially continuous tribal existence and which have functioned as autonomous entities throughout history until the present." 25 C.F.R. § 83.3. The Bureau of Indian Affairs, in accordance with the governing regulations, affords the legal designation of federal recognition to those tribes that meet its criteria. See id., at §§ 83.1-83.13.

[5] http://www.bia.gov/cs/groups/public/documents/text/idc-020700 .pdf. (Last visited: July 3, 2014).

### (iii) Civil Rights Violations

Finally, the MOWA Defendants amended their notice of removal to allege that removal is proper pursuant to 28 U.S.C. § 1443. In support thereof, the MOWA Defendants contend that the MOWA Tribe has been recognized by both the State and the federal government as an Indian Tribe and that by seizing their property, the State deprived the MOWA Tribe of certain civil rights afforded them under the 1830 Treaty of Dancing Rabbit Creek. (Doc. 31 at 9-10). The MOWA Tribe also contends that the State, in its dealings with other Indian tribes, have not seized the gambling equipment of other Indian tribes as it has done with the MOWA Tribe. The MOWA Defendants contends that such action constitutes disparate treatment and violates their civil rights. As such, the MOWA Defendants contend that they are entitled to remove this case pursuant to 28 U.S.C. § 1443. The undersigned disagrees.

The federal removal statute governing the removal of criminal prosecutions provides as follows:

> Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

> (1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

(2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

28 U.S.C. § 1443.

The Supreme Court has held that a notice of removal under 28 U.S.C. § 1443(1) must satisfy a two-pronged test. *See* Johnson v. Miss., 421 U.S. 213, 219, 95 S. Ct. 1591, 44 L. Ed. 2d 121 (1975) (citing Georgia v. Rachel, 384 U.S. 780, 86 S. Ct. 1783, 16 L. Ed. 2d 925 (1966) and City of Greenwood v. Peacock, 384 U.S. 808, 86 S. Ct. 1800, 16 L. Ed. 2d 944 (1966)). First, it must appear that the right allegedly denied the removing defendant arises under a federal law "providing for specific civil rights stated in terms of *racial equality*." Johnson, 421 U.S. at 219 (emphasis added) (citation internal quotation omitted). Claims that prosecution and conviction will violate rights under constitutional or statutory provisions of general applicability or under statutes not protecting against racial discrimination will not suffice. Id. Similarly, assertions that a removing defendant will be denied due process of law because the criminal law under which he is being prosecuted is allegedly vague or that the prosecution is assertedly a sham, corrupt, or without evidentiary basis does not, standing alone, satisfy the requirements of Section 1443(1). Id. (citation omitted).

Second, it must appear, in accordance with the provisions

of Section 1443(1), that the removing defendant is "denied or cannot enforce" the specified federal rights "in the courts of (the) State." Johnson, 421 U.S. at 219. This provision normally requires that the "denial be manifest in a formal expression of state law," such as a state legislative or constitutional provision, "rather than a denial first made manifest in the trial of the case." Id. (citation and internal quotation omitted). Under Section 1443(1),

> the vindication of the defendant's federal rights is left to the state courts except in the rare situations where it can be clearly predicted by reason of the operation of a pervasive and explicit state or federal law that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court.

City of Greenwood, 384 U.S. at 828. Failure to satisfy either prong of the two-pronged test is fatal to removal. Williams v. State of Miss., 608 F.2d 1021, 1022 (5th Cir. 1979)[6]; Provident Funding Associates, LP v. Obande, 414 Fed. App'x 236 (11th Cir. 2011).

The MOWA Tribe has failed to satisfy the two-prong test for § 1443(1). As noted *supra*, in support of removal, the MOWA Tribe argues that the State violated their civil rights afforded them under the 1830 Treaty of Dancing Rabbit Creek by seizing

---

[6] Decisions rendered by the United States Court of Appeals for the Fifth Circuit prior to September 30, 1981 are binding as precedent on the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

their gambling devices and property, and that in seizing their gambling devices and property, the State has treated them less favorably than other Indian tribes. These assertions are not sufficient to meet the first prong of § 1443(1) because the Defendants have not identified any federal laws that provide for specific civil rights stated in terms of racial equality. See Georgia v. Rachel, 384 U.S. 780, 791-92, 86 S. Ct. 1783, 1789-90, 16 L. Ed. 2d 925 (1966).

The MOWA Defendants have also failed to meet the second prong of 1443(1). As the Eleventh Circuit has explained, under the Supreme Court's interpretation of § 1443(1), it is not enough to allege that a defendant's civil rights have been corruptly denied in advance of trial, that the charges are false, or even that the defendant is unable to obtain a fair trial in a particular state court. Alabama v. Conley, 245 F.3d 1292, 1297 (11th Cir. 2001). Rather, the vindication of a defendant's federal rights is left to the state courts, unless it can be clearly predicted that the very act of bringing a defendant to trial will deny those rights. Id. Such a showing can be made if the civil rights act pursuant to which the defendant has filed a notice of removal immunizes the defendant from the prosecution at issue. See id., 245 F.3d at 1298.

In the instant case, the MOWA Defendants have not brought this removal pursuant to a civil right act specifically

addressing racial equality. Id. Moreover, the MOWA Defendants have not shown that they would be precluded from proceeding in state court. Removal is available under § 1443 "only if it can be predicted by reference to a law of general application that the defendant will be denied or cannot enforce the specified federal rights in the state courts." Rachel, 384 U.S. at 800; see also Emigrant Savings Bank v. Elam Mgmt. Corp., 668 F.2d 671, 674 (2d Cir. 1982). It is also insufficient for the removing party to have a mere apprehension that he will be denied or unable to enforce his rights in state court. Id., 668 F.2d at 673-74.

The MOWA Defendants have not shown that they cannot litigate their rights in state court, and the Court has found no independent basis for finding that the MOWA Defendants cannot argue the alleged deprivation of their federal rights in state court. In fact, the Supreme Court of the State of Alabama just recently decided a case involving tribal sovereign immunity and dram-shop actions by private parties against Indian tribes, and whether their federal right to tribal sovereign immunity was waived with regards to dram-shop actions. See Ex Parte Board of Creek Indians and PCI Gaming Authority d/b/a/ Creek Casino Montgomery, 2014 Ala. LEXIS 74 (Ala. May 23, 2014). Thus, the MOWA Defendants have failed to prove that this action is removable under 28 U.S.C. § 1443(1).

The MOWA Defendants have also failed to demonstrate that this action was properly removable to federal district court under § 1443(2), which provides removal "[f]or any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law." The first clause under § 1443(2), dealing with "any act under color of authority," confers the right to remove only upon "federal officers or agents and those authorized to act with or for them in affirmatively executing duties under any federal law providing for equal civil rights." Taylor v. Phillips, 442 Fed. App'x 441, 443 (11th Cir. 2011) (citing City of Greenwood, 384 U.S. at 824). The second clause under § 1443(2), dealing with "refusing to do any act on the ground that it would be inconsistent with such law," allows the right to remove only to state officers. City of Greenwood, 384 U.S. at 824. (citations omitted). The MOWA Tribe has not shown that it is a state or federal officer, or working for one. Thus, the MOWA Tribe cannot properly remove their state court criminal prosecution under § 1443(2).

## III. Conclusion

Based upon a careful review of the record, the undersigned RECOMMENDS that Plaintiff's Motion to Remand be **GRANTED** (Doc.

8), and that this action be remanded to the Circuit Court of Mobile County, Alabama.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. ALA. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **3rd** day of **July, 2014.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**