IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| STATE OF ALABAMA, ) | |
| ex rel Ashley M. Rich, ) | |
| District Attorney for the ) | |
| 13th Judicial District of Alabama ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. 14-0066-CG-B |
| ) | |
| ) | |
| 50 SERIALIZED JLM GAMES, INC. ) | |
| GAMBLING DEVICES, et al., ) | |
| | |
| Defendants. | |

# ORDER

This matter is before the Court on the Report and Recommendation ("R&R") of the Magistrate Judge (Doc. 36) and the objection (Doc. 37) to the R&R by Defendants MOWA Band of Choctaw Indians, Jimmy L. Martin, Chief Framon Weaver and JLM Games, Inc. (collectively referenced as the "MOWA Defendants"). Also before the Court are Plaintiff's ("the State") motion to remand (Doc. 8) and MOWA Defendants' response in opposition (Doc. 17).

The Magistrate Judge recommended this Court grant the State's motion to remand (Doc. 36). Specifically, the Magistrate Judge determined that remand was appropriate because there was no federal question and therefore this Court does not have jurisdiction to hear the case (Doc. 36).

1

After due and proper consideration of this file and a *de novo* determination of those portions of the recommendation to which objection is made, the Magistrate Judge's Report and Recommendation made under 28 U.S.C. § 636(b)(1)(B) is **ADOPTED** as the opinion of this Court, with the following additional discussion.

## DISCUSSION

The question raised by the motion to remand is whether the Court has subject matter jurisdiction to hear the case. The MOWA Defendants argue that "[w]hile the general rule is that a District Court must remand a removed action if it finds a lack of subject matter jurisdiction, that rule does not apply when the lack of subject matter jurisdiction is the result of sovereign immunity." (Doc. 17, pp. 2-3).  Although the Bureau of Indian Affairs rejected the MOWA's petition for federal recognition in 1999, the MOWA Defendants claim they are a tribe at common law and therefore enjoy sovereign immunity (Doc. 17, pp. 9-13). In particular, the MOWA Defendants argue that the Treaty of Dancing Rabbit Creek proves their immunity and thus provides the basis for federal question jurisdiction (Doc. 37, pp. 10-16). In footnote two of the R&R, the Magistrate Judge explained the reason for not considering the Treaty of Dancing Rabbit Creek:

> The Court recognizes that in order to determine whether sovereign immunity applies, a tribe must be a tribe recognized by Congress or the Bureau of Indian Affairs (BIA), see United States v. Sandoval, 231 U.S. 28, 46-47, 34 S. Ct. 1, 58 L. Ed. 107 (1913), or meet the federal common law definition. See Montoya v. United States, 180 U.S. 261, 266, 21 S.Ct. 358, 45 L. Ed. 521, 36 Ct. Cl. 577 (1901). However, this

2

> Court need not reach that issue because assuming *arguendo* that the MOWA Band is entitled to tribal sovereign immunity, as noted *supra*, the Supreme Court has made it clear that absent Congressional legislation, tribal immunity does not circumvent the requirements of the well-pleaded complaint rule. Okla. Tax Comm'n, 489 U.S. at 841. Thus, the defense of tribal sovereign immunity does not confer federal question jurisdiction over this action.

(Doc. 36, p. 16, n.2).

As the Magistrate Judge explained, even presuming sovereign immunity, the MOWA Defendants must still comply with the well-pleaded complaint rule. (Doc. 36, p. 16) A defense of sovereign immunity alone does not convert the state law claims into federal questions. See Okla. Tax Comm'n v. Graham, 489 U.S. 838, 841 (1989) (stating "But it has long been settled that the existence of a federal immunity to the claims asserted does not convert a suit otherwise arising under state law into one which, in the statutory sense, arises under federal law. Gully v. First Nat'l Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). The possible existence of a tribal immunity defense, then, did not convert Oklahoma tax claims into federal questions, and there was no independent basis for the original federal jurisdiction to support removal.")

The MOWA Defendants object to the Magistrate Judge's findings and argue that "[t]he Court cannot have it both ways: it cannot assume that the Tribe has immunity (to avoid implicating a federal question under the Treaty) and then continue asserting jurisdiction over the Tribe by ordering remand to the State Court." (Doc. 37 p. 12). This argument represents a

3

misguided view on jurisdiction. Granting a remand is not an exercise of jurisdiction, but rather an acknowledgment of the absence of jurisdiction. The Court is not required, as the MOWA Defendants insist, to decide whether or not they are a tribe at common law. There are no federal claims in this case and thus the Court must remand to state court. Whether or not the MOWA Defendants are a tribe at common law is not a necessary issue to address and the Court expresses no opinion on that question.

The MOWA Defendants also argue that the Magistrate Judge did not give adequate consideration to the preemptive effect of the Indian Regulatory Gaming Act's ("IGRA") penal provision, 18 U.S.C. § 1166, which they claim provides a federal statutory basis for the case. (Doc. 37 p. 16).

IGRA "provide[s] a statutory basis for the operation and regulation of gaming by Indian tribes." Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 48, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Congress passed the IGRA in response to the Supreme Court's holding in California v. Cabazon, 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987). See S.Rep. No. 100–446 (1988), reprinted in 1988 U.S.C.C.A.N. 3071. Cabazon held that, in the absence of Congressional regulation of tribal gaming, Indian tribes could conduct gaming on Indian lands without state interference if the state permitted gaming in any form. Cabazon's holding essentially "left Indian gaming largely unregulated by the states." Seminole Tribe of Fla. v. Florida, 11 F.3d 1016, 1019 (11th Cir.1994), aff'd, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d

4

252 (1996). In 1988, Congress filled the federal regulatory void with IGRA. Alabama v. PCI Gaming Auth., No. 2:13-CV-178-WKW, 2014 WL 1400232 (M.D. Ala. Apr. 10, 2014). IGRA legalizes specified gaming activities on Indian lands but does not give Indian tribes unfettered control over these activities. Id. IGRA preempts state anti-gaming laws, but only to the extent of its application. Carruthers v. Flaum, 365 F. Supp. 2d 448, 466 (S.D.N.Y. 2005) see also Cayuga Indian Nation of New York v. Village of Union Springs, 317 F.Supp.2d 128, 148 (N.D.N.Y.2004); First American Casino Corp. v. Eastern Pequot Nation, 175 F.Supp.2d 205, 209 (D.Conn.2000) (citing State ex rel. Nixon v. Coeur D'Alene Tribe, 164 F.3d 1102 (8th Cir.1999)), cert. denied, 527 U.S. 1039, 119 S.Ct. 2400, 144 L.Ed.2d 799 (1999); Gaming Corp. of America v. Dorsey & Whitney, 88 F.3d 536 (8th Cir.1996).

IGRA also includes penal provisions. See 18 U.S.C. §§ 1166-1168. Section 1166 provides that "for purposes of Federal law, all State laws pertaining to the licensing, regulation, or prohibition of gambling, including but limited to criminal sanctions applicable thereto," apply in "Indian country." § 1166(a). The MOWA Defendants argue that their gambling activities occurred in "Indian Country" and therefore, federal law applies. (Doc. 37, pp. 16 – 19). However, a review of the statute reveals that IGRA applies only to federally recognized tribes and therefore does not apply to the MOWA Defendants.

IGRA defines "Indian Tribe" as "any Indian tribe, band, nation or other organized group or community of Indians which – (A) is recognized as eligible by the Secretary for the special programs and services provided by the United States to Indians because of their status as Indians…" 25 U.S.C. § 2703 (5). IGRA further defines "Secretary" as "The term 'Secretary' means the Secretary of the Interior." 25 U.S.C. § 2703 (10). The statute is clear that it only applies to federally recognized Indian Tribes. Congress did not define "Indian tribes" as "state, federal and common law recognized tribes." Instead, IGRA explicitly states tribes recognized as eligible for federally recognized programs and services by the Secretary of the Interior. 25 U.S.C. §§ 2703 (5), (10). Indeed, precedent also supports the conclusion that IGRA applies only to federally recognized tribes. See Passamaquoddy Tribe v. Maine, 75 F.3d 784, 792, n.4 (lst Cir. 1996) ("[IGRA] has no application to tribes that do not seek and attain federal recognition."); First Am. Casino Corp. v. Eastern Pequot Nation, 175 F. Supp. 2d 205, 209-10 (D. Conn. 2000) (Because "IGRA's text unambiguously limits its scope to gaming by tribes that have attained federal recognition, the statute does not apply to defendant's gaming-related activities [where the Indian tribe had not yet attained formal federal recognition]."); see also Picayune Rancheria of the Chukchansi Indians v. Tan, 2014 U.S. Dist. LEXIS 29973, at *9 (E.D. Cal. Mar. 7, 2014) ("Plaintiffs are not an "Indian tribe" for purposes of IGRA because they do not fall within such definition under Section 2703, Subsection 5 of Title 25 of the United

States Code." (quotation marks in original)); Carruthers v. Flaum, 365 F. Supp. 2d 448, 466 (S.D.N.Y 2005) ("IGRA applies only to the activities of federally recognized tribes.")

The U.S. Supreme Court's recent decision in Michigan v. Bay Mills Indian Community further supports a finding that IGRA only applies to federally recognized tribes. Michigan v. Bay Mills Indian Cmty., 134 S. Ct. 2024, 188 L. Ed. 2d 1071 (2014). Bay Mills involved a federally recognized tribe in Michigan, who began constructing a casino outside of Indian reservation lands. Id at 2029. Michigan sued, arguing that IGRA extended to all Indian gambling activities, both on and off the reservation. Id. The Supreme Court sided with the Bay Mills Indian Community and found that without explicit authority from Congress, the Court cannot abrogate the federally recognized tribes' sovereign immunity. Id at 2039. Though IGRA created an anomaly of gambling run by federally recognized tribes off Indian lands, the Court refused to expand the purview of the statute. Id at 2033. (stating "But this Court does not revise legislation, as Michigan proposes, just because the text as written creates an apparent anomaly as to some subject it does not address. Truth be told, such anomalies often arise from statutes, if for no other reason than that Congress typically legislates by parts – addressing one thing without examining all others that might merit comparable treatment.").

7

Here, the Bay Mills decision works against the MOWA Defendants. Key to the Supreme Court's ruling was its reluctance to expand the purview of IGRA and thus threaten a *federally recognized* tribe's sovereign immunity. In this case, the MOWA Defendants are not federally recognized by the Secretary of the Interior. Even if they were, for the sake of argument, a tribe at common law, IGRA still would not apply. The MOWA Defendants point to no evidence of a congressional intent to completely preempt the field of regulating gaming by Indian tribes that have not attained federal recognition. As the Supreme Court indicated, the language of IGRA is clear and a court does not have a "roving license, in even ordinary cases of statutory interpretation, to disregard clear language simply on the view that (in Michigan's words) Congress 'must have intended' something broader." Id at 2034. This Court is not inclined to expand the purview of the statute to include non-federally recognized tribes without explicit authority from Congress.

Finally, MOWA Defendants contend that the Magistrate Judge wrongly considered the State's motion to remand before the Defendant's motion to dismiss. Although the Motion to Dismiss was filed before the Motion to Remand,

> [t]his Court's analysis [must] begin[ ] with the threshold jurisdictional question raised by [the] Motion to Remand. Absent federal jurisdiction, this Court lacks the power to decide [the] pending Motion to Dismiss, and must immediately remand this action to state court without reaching the question of whether Plaintiff[ ] ha[s] stated cognizable claims against [the]

8

Defendants. Thus, the Court must first determine whether this action was properly removed from state court.

*Wilks v. Callahan,* Civil Action No. 08–638–CG–M, 2009 WL 2243702, at *3 (S.D.Ala. July 24, 2009) (citing *Morrison v. Allstate Indent. Co.,* 228 F.3d 1255, 1261 (11th Cir.2000); *University of S. Ala. v. American Tobacco Co.,* 168 F.3d 405, 411 (11th Cir.1999)); *see also Klempner v. Northwestern Mut. Life Ins. Co.,* 196 F.Supp.2d 1233, 1242–43 (S.D.Fla.2001) ("Although a motion to dismiss is currently pending in this Court [ ], 'a federal court must remand for lack of subject matter jurisdiction notwithstanding the presence of other motions pending before the court.' ") (quoting *University of S. Ala.,* 168 F.3d at 411). The Magistrate Judge correctly considered the motion for remand first.

## CONCLUSION

The State's Motion to Remand (Doc. 8) is **GRANTED** and this case is hereby **REMANDED** to the Circuit Court of Mobile County, Alabama.

**DONE and ORDERED** this 30th day of March, 2015.

/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE